UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JERRY W. CAMPBELL,<br><br>    Plaintiff,<br><br>  v.<br><br>KEITH YORDY; SGT. BLAIR; CORIZON, INC.; SGT. RAMIREZ; IDAHO DEPARTMENT OF CORRECTIONS; and KEVIN KEMPF,<br><br>    Defendants. | Case No. 1:15-cv-00529-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

  Plaintiff Jerry W. Campbell is a prisoner currently in the custody of the Idaho Department of Correction ("IDOC"). United States Magistrate Judge Candy W. Dale previously reviewed Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A and allowed him to proceed on the following claims: (1) Eighth Amendment claims against Defendants Yordy, Blair, and Kempf for failing to protect Plaintiff from attack and for housing Plaintiff in unsanitary conditions of confinement; and (2) Eighth Amendment claims against Corizon—the private entity providing medical care to inmates under contract with the IDOC—for understaffing in the medical annex and for housing Plaintiff

**MEMORANDUM DECISION AND ORDER - 1**

in (or failing to transfer Plaintiff from) the medical annex despite unsanitary conditions. (Dkt. 10 at 4-5.) Plaintiff was not allowed to proceed on any other claims at that time.

This case was later reassigned to the undersigned judge. Now pending before the Court is Defendant Corizon's Motion for Summary Judgment, which the IDOC Defendants have joined and which is now ripe for adjudication. (Dkt. 22, 24). Several other motions are also pending.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order granting Defendants' Motion and dismissing this case without prejudice for failure to exhaust available administrative remedies.

## PLAINTIFF'S MOTION TO REVIEW PAGES OF AMENDED COMPLAINT

In its order reviewing Plaintiff's Amended Complaint, the Court previously determined that Plaintiff failed to state a plausible due process claim based on his disciplinary hearing and his placement in administrative segregation. (Dkt. 10 at 5.) In doing so, the Court erroneously stated that Plaintiff had failed to allege the amount of time he spent in administrative segregation. The Court had mistakenly overlooked the fact that the Amended Complaint had alleged that Plaintiff was placed in administrative segregation for 10 days. (*See* Dkt. 9 at ECF p.13.) Therefore, the Court will grant Plaintiff's Motion to Review Pages of the Amended Complaint and will reconsider

**MEMORANDUM DECISION AND ORDER - 2**

Plaintiff's due process claim under the screening standards set forth in 28 U.S.C. § 1915A.

The Fourteenth Amendment right to procedural due process prohibits the government from depriving an individual of a liberty or property interest without following adequate procedures. *Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). A prisoner possesses a liberty interest in avoiding a change in confinement—such as a transfer to restrictive housing—only if that change imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The length of time an inmate spends in restrictive housing is one factor in this analysis, along with whether the segregation was essentially the same as other forms of segregation, whether the change in confinement constituted a major disruption in the inmate's environment, and whether the length of the inmate's sentence was affected. *Id.* at 486-87.

Considering all of the *Sandin* factors together, the Court concludes that the Amended Complaint does not plausibly suggest that Plaintiff had a liberty interest protected by the Due Process Clause. The small amount of time that Plaintiff was confined in administration segregation—a mere ten days—weighs heavily against finding a liberty interest, and the length of Plaintiff's sentence was not affected. These factors are not outweighed by the other *Sandin* factors.

Therefore, the Court reaffirms Judge Dale's conclusion that Plaintiff has not stated a colorable due process claim based on his disciplinary proceedings and his placement in

administrative segregation for ten days. The Court agrees that the only plausible claims stated in the Amended Complaint are Plaintiff's Eighth Amendment failure-to-protect and sanitation claims against Defendants Yordy, Blair, and Kempf, and Plaintiff's Eighth Amendment understaffing and sanitation claims against Corizon.

## IDOC DEFENDANTS' MOTION TO STRIKE

The IDOC Defendants have filed a Motion to Strike Plaintiff's Sur-reply to Defendants' Motion for Summary Judgment. (Dkt. 35.) Defendants are correct that the sur-reply was not authorized. However, because Plaintiff is proceeding pro se, the Court will exercise its discretion to consider the sur-reply, along with all filings in this case. The Motion to Strike will be denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1.      **Factual Background**

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of the facts.

IDOC has established a grievance process, which is attached as Exhibit A-1 to the Affidavit of Jill Whittington, IDOC's Grievance Coordinator ("Whittington Aff.") (Dkt. 22-4). This grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an offender concern form "addressed to the most appropriate staff member." (Whittington Aff., Dkt. 22-3, ¶ 5.) If the issue cannot be resolved informally through the concern form, the inmate must then

**MEMORANDUM DECISION AND ORDER - 4**

file a grievance form. (*Id*.) A grievance must be submitted within 30 days of the incident giving rise to the grievance.

When submitting a grievance form, the inmate must attach a copy of the concern form, showing the inmate's attempt to settle the issue informally; the grievance must also "contain 'specific information including [the] nature of the complaint, dates, places, and names.'" (*Id*. ¶ 6.) When the Grievance Coordinator receives a grievance, the coordinator enters the grievance information into the Corrections Integrated System ("CIS"), "an electronic database used to track inmate grievances." (*Id*.)

The grievance coordinator then assigns the inmate grievance "to the staff member most capable of responding to and, if appropriate, resolving the issue." (*Id*.) That staff member responds to the grievance and returns it to the coordinator. The coordinator then forwards the grievance to a "reviewing authority." In the case of a medical grievance, the reviewing authority is the "facility Health Services Administrator." (*Id*.) In other cases, the reviewing authority is generally a deputy warden. The reviewing authority reviews the staff member's response to the grievance and issues a decision on the inmate's grievance. The grievance decision is then returned to the inmate. (*Id*. at ¶ 7.)

If the inmate is not satisfied with the decision on a grievance, the inmate may appeal that decision. (*Id*. ¶ 8.) If the grievance involves a medical issue, the "appellate authority" is the Health Services Director. (*Id.*) In other cases, the appellate authority is the warden of the prison. The appellate authority decides the grievance appeal and the appeal form is returned to the inmate. Not until the completion of all three of these

**MEMORANDUM DECISION AND ORDER - 5**

steps—concern form, grievance form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 9.)

Plaintiff submitted only one grievance to prison authorities in the last eight years. That grievance was submitted in May 2008 and was assigned Grievance No. IC 080000282. This grievance requested a transfer of funds to Plaintiff's institutional trust account. (Ex. A-3 to Whittington Aff., Dkt. 22-6.)

## 2. Standards of Law

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co.*, 336 F.3d at 889.

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P.

**MEMORANDUM DECISION AND ORDER - 7**

56(c)(2).[1] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."

---

[1]    In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the content of the evidence could be presented in an admissible form at trial, the content may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

**MEMORANDUM DECISION AND ORDER - 8**

*Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[2] prisoners are required to exhaust all available administrative remedies within the prison system before they can include their claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, an inmate need only exhaust those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001).

---

[2] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 9**

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth*, 532 U.S. at 741). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a

**MEMORANDUM DECISION AND ORDER - 10**

preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) is operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are so confusing that no

**MEMORANDUM DECISION AND ORDER - 11**

reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

### 3. Plaintiff Did Not Exhaust Available Administrative Remedies

Plaintiff submitted only one grievance, which had nothing to do with Defendants' alleged failure to protect Plaintiff, with Plaintiff's medical treatment, or with unsanitary conditions. (Ex. A-3 to Whittington Aff., Dkt. 22-6.) Therefore, Defendants have met their initial burden of establishing that available administrative remedies existed and that Plaintiff did not exhaust those remedies.

The burden thus shifts to Plaintiff to raise a genuine dispute of material fact as to whether "something in his particular case . . . made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Plaintiff makes three arguments in his attempt to do so.

First, Plaintiff argues that he exhausted allegedly similar claims regarding overcrowding and medical treatment asserted in *Balla v. IDOC*, Case No. 1:81-cv-1165-BLW, a 35-year old class action case that remains pending in this Court. (Dkt. 31 at 2-3.) Plaintiff asserts that exhausting those claims was sufficient to exhaust his current claims and that he "need not exhaust them again." (*Id*. at 2.)

Plaintiff is incorrect. Plaintiff's Amended Complaint asserts independent constitutional violations, and his claims are not dependent upon *Balla*. Indeed, as the Court previously explained, Plaintiff "may not challenge, in this case, a failure to comply with a court order in a different case."[3] (Dkt. 10 at 6.) Rather, "a claim that a defendant is violating *the Constitution* is cognizable in this separate § 1983 action—a claim that a

---

3   Any such challenge must be brought in the original action, through class counsel.

**MEMORANDUM DECISION AND ORDER - 13**

defendant is violating *a court order in a different case* is not." (*Id.*) Plaintiff cannot rely on his exhaustion of other, earlier claims to avoid exhausting the claims that are currently at issue in this case.

Second, Plaintiff asserts that he exhausted his failure-to-protect claims through his disciplinary proceedings and, therefore, was not required to use the grievance system. As a result of the attack on Plaintiff by inmate Nelson, Plaintiff was issued a Disciplinary Offense Report ("DOR") for fighting. After Plaintiff was found guilty of the DOR, he appealed, claiming that he was not allowed to present live witnesses at the hearing. In the appeal form, Plaintiff asked that the guilty finding be overturned because inmate Nelson "has prior behavior issues with striking other inmates yet you have failed to protect me from this inmate. I did not strike him. I merely raised my hands to protect myself from this man. And, because I protected myself, I have been punished." (Ex. 1 to Plaintiff's Opposition, Dkt. 31-1 at 2-3.)

After the appeal form was returned to Plaintiff as non-compliant with policy, Plaintiff resubmitted his DOR appeal, stating that he should have been allowed to call witnesses at the hearing who would have testified that he was defending himself. (Ex. 3 to Plaintiff's Opposition, Dkt. 31-1 at 7.) Warden Yordy denied Plaintiff's appeal, stating that the hearing officer "reviewing the videotape of the [underlying] incident and it appears you were actively involved in the argument that led up to the confrontation. That is some evidence to support your involvement." (Ex. 4 to Plaintiff's Opposition, Dkt. 31-1 at 11.)

**MEMORANDUM DECISION AND ORDER - 14**

Plaintiff relies on *Riggs v. Valdez*, Case No. 1:09-cv-00010-BLW (D. Idaho), in arguing that his use of the DOR appeal process was sufficient to exhaust available administrative remedies. In that case, Chief Judge B. Lynn Winmill determined that the inmate plaintiffs, who attempted to exhaust their claims through the DOR appeal process, were deemed to have exhausted available administrative remedies even though the claims should have been exhausted through the grievance process. *Riggs*, 2010 WL 4117085, at *9-*10 (D. Idaho Oct. 18, 2010). The plaintiffs in *Riggs* had been given confusing and misleading information by prison staff about how to grieve their claims, which—like Plaintiff's DOR appeal—challenged both the issuance of the DORs and the incidents underlying the issuance of those DORs. Further, the rules regarding which claims had to be exhausted in DOR proceedings versus the grievance process were unclear. Judge Winmill concluded that these factors "reasonably led these prisoners to believe that the DOR process was the appropriate vehicle for raising all such claims." (*Id*. at *10.) Thus, the grievance system was effectively unavailable to the inmates.

However, that the *Riggs* plaintiffs were excused from exhaustion because the grievance procedure had been rendered effectively unavailable in that case does not mean that Plaintiff is excused from exhaustion in this case, which has different facts. Plaintiff does not allege that any prison staff member told him his failure-to-protect claims had to be raised in the DOR appeal or that he received any confusing or misleading information regarding the grievance or appeal process. Further, the current grievance policy includes

**MEMORANDUM DECISION AND ORDER - 15**

an example that helps explain the difference between claims that may be raised only in a DOR appeal and those that should be raised in the grievance process:

> **Example #2** – An offender claims his placement resulted in a fight for which he received a DOR. An appeal to the DOR itself, the offender must use the DOR appeal process. *The offender could file a grievance regarding placement.*

(Ex. A-1 to Whittington Aff., Dkt. 22-4, at 6 (verbatim) (emphasis added).) Plaintiff was aware of this example, and indeed he cites it in his sur-reply—though he omits the final sentence. As the example makes clear, if an inmate wants to challenge something related to, *but not the subject of*, the DOR, his remedy lies in the grievance process. On the other hand, if the inmate wants to challenge the DOR *itself*, his remedy lies in the DOR appeal process.

Further, *Riggs* was decided before the Supreme Court's decision in *Ross v. Blake*, which substantially curtailed lower courts' ability to excuse exhaustion based on the imprecise nature of a prison grievance policy. Under current law, such a policy is considered unavailable only if no ordinary prisoner can understand it. *Ross*, 136 S. Ct. at 1859. Thus, to the extent *Riggs* held that the current IDOC grievance policy with respect to DOR proceedings is unclear or imprecise, the Court now concludes, under *Ross*, that the policy is not "so opaque that it becomes, practically speaking, incapable of use." *Id.*

Finally, Plaintiff argues that he believed he could not "re-grieve" his current claims, and therefore exhaustion is excused, because the IDOC grievance policy does not allow extra grievances on an issue that has already been grieved. (Dkt. 31 at 4; *see also* Plaintiff's Sur-Reply, Dkt. 34, at 4.) Again, Plaintiff relies on the purported exhaustion of

**MEMORANDUM DECISION AND ORDER - 16**

his *Balla* claims. The flaw in Plaintiff's argument is that the claims he raises in this action are *not* the same claims he says he previously grieved with respect to the *Balla* case. Plaintiff's current claims are based on the action (or inaction) of Defendants arising from Plaintiff's recent conditions of confinement and are entirely separate from the claims at issue in *Balla*. The Court concludes that no "reasonable prisoner" would believe, based on the grievance policy's language regarding previously-grieved issues,[4] that he was not allowed to grieve the issues involved in the current conditions-of-confinement claims. *Ross*, 136 S. Ct. at 1859. The grievance policy specifically provides an exception that an inmate can file a second grievance in instances "[w]hen time has elapsed that might affect the issue (e.g., one year has passed since a grievance regarding a classification issue was filed)." (Ex. A-1 to Whittington Aff., Dkt. 22-4, at 5.) The passage of a decade or more between the exhaustion of any of Plaintiff's *Balla* claims and the incidents giving rise to his current claims plainly falls within this exception, and no reasonable prisoner would have believed that he was prohibited from filing a new grievance related to a new incident.

Plaintiff has simply not provided sufficient evidence to rebut Defendants' evidence that he did not exhaust available administrative remedies as to any of his current claims. Therefore, this case will be dismissed without prejudice.

## ORDER

---

[4] The grievance policy states that "[a]fter an issue has been reviewed at the appellate level and all administrative review process remedies exhausted, a new *Offender Concern Form* (appendix A) or *Grievance/Appeal Form* (appendix B) that addresses the same issue will be rejected. This includes any issue that is written so that it appears to be a new issue." (Ex. A-1 to Whittington Aff., Dkt. 22-4, at 5.)

**MEMORANDUM DECISION AND ORDER - 17**

**IT IS ORDERED:**

1. Plaintiff's Motion to Withdraw his Motion for Voluntary Dismissal (Dkt. 30) is GRANTED. Plaintiff's Motion for Voluntary Dismissal (Dkt. 27) is therefore MOOT.

2. Plaintiff's Motion for Extension of Time to File Response to Motion for Summary Judgment (Dkt. 28) is GRANTED.

3. Plaintiff's Motion to Review Pages of the Amended Complaint (Dkt. 25) is GRANTED. Plaintiff's Amended Complaint fails to state a plausible due process claim based on Plaintiff's disciplinary proceedings and placement in restrictive housing.

4. The IDOC Defendants' Motion to Strike Plaintiff's Sur-reply to Defendants' Motion for Summary Judgment (Dkt. 35) is DENIED.

5. Defendants' Motion for Summary Judgment (Dkt. 22) is GRANTED. This entire action is DISMISSED without prejudice for failure to exhaust available administrative remedies.

DATED: December 15, 2016

Edward J. Lodge
United States District Judge